UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 31, 2014
```

MICHAEL McCLANAHAN,

              Plaintiff,

     · v.

NEW YORK CITY POLICE COMMISSIONER
RAYMOND W. KELLY, in his individual and
official capacity, MAYOR MICHAEL
BLOOMBERG, in his individual and official
capacity, THE CITY OF NEW YORK, NEW
YORK CITY POLICE OFFICER DOHERTY,
in his individual and official capacity, and NEW
YORK CITY POLICE OFFICER JOHN DOE,
in his individual and official capacity,

              Defendants.

**MEMORANDUM**
**OPINION & ORDER**

12 Civ. 5326 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Pro se Plaintiff Michael McClanahan brings this action pursuant to 42 U.S.C. § 1983 against the City of New York, Mayor Michael Bloomberg, New York City Police ("NYPD") Commissioner Raymond W. Kelly, and NYPD Officer Patrick Doherty, asserting claims arising from his May 19, 2009 arrest.

        Defendants have moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). McClanahan has moved for reconsideration of this Court's September 5, 2013 order denying his motion for a default judgment. For the reasons stated below, Defendants' motion to dismiss will be granted, and McClanahan's motion for reconsideration will be denied.

## BACKGROUND

McClanahan alleges that on May 19, 2009,[1] at approximately 1:43 a.m., Officer Doherty and another unidentified officer knocked on his apartment door at 3215 Bainbridge Avenue, Apartment 5-E, in the Bronx. (Cmplt. (Dkt. No. 1) ¶¶ 13, 28) When McClanahan answered, Officer Doherty asked him if he "had a problem with a resident in apartment 4-E." (Id. ¶ 28) McClanahan denied having a problem with that individual, but told Officer Doherty that "on previous occasions someone called the police and lied[,] stating that there was constant loud noise[] and large numbers of people entering and departing from Plaintiff McClanahan's apartment." (Id. ¶¶ 28-29) At that point, Officer Doherty "violently pulled Plaintiff from the apartment, . . . pushed [him] against the wall[,] and proceeded to search under [Plaintiff's] shirt and . . . in [his] pants['] pockets." (Id. ¶¶ 33-34) The unidentified officer then placed McClanahan in handcuffs – which caused his arms to swell – and brought McClanahan to the 52nd Precinct. (Id. ¶¶ 37, 40)

Later, at the precinct, Officer Doherty opened the door to the cell where McClanahan was being held and told McClanahan that he "was going to be released and receive a summons." (Id. ¶ 41) As "McClanahan began to walk out of the cell[, however,] Defendant Doherty violently pushed [him] back into the cell" and put "shackles" on his legs, causing McClanahan's "ankles to swell." (Id. ¶¶ 42-43) McClanahan was subsequently "processed and

---

[1] The parties disagree as to the date of Plaintiff's arrest. The Complaint alleges that officers came to McClanahan's apartment and arrested him "[o]n or about May 19, 2009." (Cmplt. ¶ 28). Defendants assert, however, that McClanahan was arrested on May 9, 2009, citing an arrest report prepared by Officer Doherty. (Abt Decl. (Dkt. No. 11), Ex. C) The factual dispute concerning the date of McClanahan's arrest is not material to resolving Defendants' motion because – as explained below – Plaintiff's false arrest, unlawful search, and excessive force claims are time-barred regardless of which date is used.

held in jail until his arraignment in Bronx Criminal Court approximately 48 hours after [he] was illegally arrested," at which point he "was released on his own recognizance." (Id. ¶ 44).

McClanahan was charged in a criminal complaint with Menacing in the Third Degree, in violation of N.Y. Penal Law § 120.15, and Harassment in the Second Degree, in violation of N.Y. Penal Law § 240.26(1). (Abt Decl. (Dkt. No. 11), Ex. D at 1)[2] Officer Doherty signed the criminal complaint on May 9, 2009, at 4:30 p.m. (Id. at 2) According to McClanahan, "[a]ll criminal complaints, allegations and charges were sworn to under oath by Defendant Doherty as true, even though he knew them to be false." (Id. ¶ 45) McClanahan further alleges that "Defendants had no cause, let alone probable cause or reasonable suspicion, to arrest, exercise excessive force, charge and detain Plaintiff," and that "[t]heir actions were based on malice and bad faith[,] and were supported by false statements." (Id. ¶ 48)

McClanahan further alleges that "[o]n August 14, 2009, all charges were dismissed, with prejudice, on the motion of the District Attorney of Bronx County." (Id. ¶ 46) In support of this allegation, McClanahan has attached to the Complaint a copy of a September 1, 2009 certificate of disposition; that document states, in part, that

> on 08/14/2009 the above action was dismissed and all pending criminal charges related to this action were also dismissed by the Honorable Torres, R[,] then a judge of this court.
>
> . . . .
>
> The above mentioned dismissal is a termination of the criminal action in favor of the accused and pursuant to Section 160.60 of the Criminal Procedure Law "the arrest and prosecution shall be deemed a nullity and the accused shall be restored, in contemplation of law, to the status occupied before the arrest and prosecution."

---

[2] "In reviewing the Defendants' motion [to dismiss]," this Court "may consider documents that are in the public record, and of which judicial notice may be taken under Federal Rule of Evidence 201." Jovanovic v. City of New York, No. 04 Civ. 8437(PAC), 2006 WL 2411541, at *5 (S.D.N.Y. Aug. 17, 2006) (citations omitted).

(Cmplt. (Dkt. No. 1), Ex. 1)

McClanahan filed his complaint in this action on July 10, 2012. (Cmplt. (Dkt. No. 1)) Pursuant to 42 U.S.C. § 1983, McClanahan brings claims for false arrest, malicious prosecution, unlawful search, and excessive force. (Id. ¶¶ 1, 33-34, 37, 42-45, 48, 52, 56) He also asserts state law claims for assault and battery, trespass, violation of the right to privacy, negligence, false arrest, and false imprisonment.[3] (Id. ¶ 26)

Defendants have moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) arguing, inter alia, that (1) Plaintiff's false arrest, unlawful search, and excessive force claims are barred by the statute of limitations; (2) Plaintiff's malicious prosecution claim is without merit because Officer Doherty acted with probable cause; (3) Plaintiff has not alleged the personal involvement of Commissioner Kelly and Mayor Bloomberg; and (4) Plaintiff has not adequately alleged a Monell claim against the City.[4] (Def. Br. (Dkt. No. 12) at 1)

---

[3] The Complaint also references Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d). (See Cmplt. (Dkt. No. 1) ¶¶ 23-24) The purpose of Title VI is "to halt federal funding of entities that [engage in] racial discrimination. . . ." Regents of Univ. of California v. Bakke, 438 U.S. 265, 284 (1978). McClanahan does not allege facts sufficient to support a claim under Title VI, and "Title VI was not intended to remedy instances of unreasonable [searches and] seizures in violation of the Fourth Amendment." Alexander v. Underhill, 416 F. Supp. 2d 999, 1008 (D. Nev. 2006). Accordingly, to the extent that the Complaint asserts a claim under Title VI, that claim will be dismissed.

[4] Liberally construing Plaintiff's opposition papers (see Pltf. Opp. Br. (Dkt. No. 15) at 4; see also Pltf. March 16, 2014 default judgment application), it appears that he seeks reconsideration of this Court's September 5, 2013 order (Dkt. No. 14) denying Plaintiff's motion for a default judgment.

McClanahan obtained a certificate of default on October 16, 2012 (Dkt. No. 5), and moved for a default judgment on October 17, 2012. (Dkt. No. 6) On September 5, 2013, this Court denied McClanahan's motion. (See Dkt. No. 14) In doing so, the Court observed that Defendants had received a sixty-day extension of time to answer or otherwise move with respect to the Complaint on August 14, 2012 (see id. at 1-2), and that Defendants submitted a letter on October 15, 2012, asking the Court to (1) grant an additional two-week extension of time to answer or otherwise move with respect to the Complaint, and (2) schedule a pre-motion conference in

4

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). These factual allegations must be "'sufficient to raise a right to relief above the speculative level.'" Rahman v. Fisher, 607 F. Supp. 2d 580, 584 (S.D.N.Y. 2009) (quoting ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)). "In considering a motion to dismiss . . . , the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pleaded "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

---

advance of an anticipated motion to dismiss. (Id. at 2) Defendants had not answered or otherwise responded to the Complaint as of October 16, 2012 – when McClanahan obtained a certificate of default – but they had requested an extension of time and a pre-motion conference. (Id. at 4)

Although Defendants mistakenly believed that a request for a pre-motion conference would toll the deadline for responding to the Complaint under the Court's Individual Rules, the Court determined that there was "no evidence that their misreading of the [Court's] rules was willful, deliberate or otherwise in bad faith." (Id.) Accordingly, this Court denied McClanahan's motion for a default judgment. (Id. at 6) Because Plaintiff has presented this Court with no basis to revisit that order, his motion for reconsideration will be denied.

5

"When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiff['s] . . . complaint, . . . to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citation omitted). "[A]llegations made in a pro se plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss." Braxton v. Nichols, No. 08 Civ. 08568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) (citations omitted).

"A pro se litigant's submissions are held to 'less stringent standards than [those] drafted by lawyers.'" Whitfield v. O'Connell, No. 09 Civ. 1925(WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (alterations in original) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972). Where a "plaintiff is proceeding pro se, the Court construes the complaint liberally, 'interpret[ing] it to raise the strongest arguments that it suggests.'" Braxton, 2010 WL 1010001, at *1 (internal citations omitted) (quoting Harris v. Westchester Cnty. Dep't of Corr., No. 06 Civ. 2011(RJS), 2008 WL 953616, at *2 (S.D.N.Y. Apr. 3, 2008)). However, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact.'" Whitfield, 2010 WL 1010060, at *4 (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) ("[T]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief].")

I.  **SECTION 1983 CLAIMS AGAINST OFFICER DOHERTY**

    A.  **False Arrest, Unlawful Search, and Excessive Force Claims**

        1.  **Applicable Law**

"'The statute of limitations was enacted . . . to prevent the bringing of stale claims and to protect defendants from the fear of unexpected litigation.'" Hutchinson v. City of New York, No. 07 Civ. 841 (RJD)(CLP), 2010 WL 1437926, at *4 (E.D.N.Y. Feb. 8, 2010) (quoting Afrika v. Selsky, 750 F. Supp. 595, 599 (S.D.N.Y. 1990)). A statute of limitations "limit[s] the circumstances in which a reviewing court can grant relief," In re Enterprise Mortg. Acceptance Co., Sec. Litig., 391 F.3d 401, 409 (2d Cir. 2004) (citations omitted), and "creates an affirmative defense where plaintiff failed to bring suit within a specified period of time after his cause of action accrued. . . ." Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 597 F.3d 84, 88 n.4 (2d Cir. 2010).

Because Congress did not provide a specific statute of limitations for Section 1983 actions, "the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions.'" Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002) (quoting Owens v. Okure, 488 U.S. 235, 249-50 (1989)) (alterations in original). "In New York, the personal injury statute of limitations that applies to section 1983 actions is three years." Quiles v. City of New York, No. 01 Civ. 10934 (LTS)(THK), 2003 WL 21961008, at *5 (S.D.N.Y. Aug. 13, 2003) (citing Owens, 488 U.S. at 251); see Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 225 (2d Cir. 2004); see also N.Y. C.P.L.R. § 214(5).

"While state law supplies the statute of limitations for claims under section 1983, federal law determines when a federal claim accrues." Quiles, 2003 WL 21961008, at *5 (citing Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001)). In general, "accrual occurs 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" Pearl, 296

7

F.3d at 80 (quoting <u>Singleton v. City of New York</u>, 632 F.2d 185, 191 (2d Cir. 1980) (quoting <u>Bireline v. Seagondollar</u>, 567 F.2d 260, 263 (4th Cir. 1977))). Accordingly, a false arrest claim accrues at the time of arraignment. <u>See</u> <u>Wallace v. Kato</u>, 549 U.S. 384, 397 (2007) ("[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained to legal process."); <u>see</u> <u>also</u> <u>Swinton v. City of New York</u>, 785 F. Supp. 2d 3, 12 (E.D.N.Y. 2011) ("[T]he limitations period for a false arrest claim begins 'when the alleged false imprisonment ends,' namely 'once the victim becomes held pursuant to [legal] process – when, for example, he is bound over by a magistrate or arraigned on charges.'" (alterations in original) (quoting <u>Wallace</u>, 549 U.S. at 389)).

An unlawful search claim accrues at the time of the search. <u>See, e.g.</u>, <u>Spencer v. Connecticut</u>, 560 F. Supp. 2d 153, 159 (D. Conn. 2008) ("[S]o long as the plaintiff knows or has reason to know of the search, a claim for an illegal search accrues, and a plaintiff has a complete and present cause of action, when the act of searching the property is complete.").

Finally, an excessive force claim accrues "when the use of force occurred." <u>Jefferson v. Kelly</u>, No. 06 Civ. 6616 (NGG)(LB), 2008 WL 1840767, at *3 (E.D.N.Y. Apr. 22, 2008) (citing <u>Singleton</u>, 632 F.2d at 191); <u>see</u> <u>Perez v. Johnson</u>, No. 07 Civ. 3761 (NRB), 2008 WL 2876546, at *2 (S.D.N.Y. July 23, 2008) ("Plaintiff's first claim, for excessive force, accrued . . . when he was allegedly injured by the arresting officers.").

2.     **Analysis**

The latest date that McClanahan's false arrest claim could have accrued is May 21, 2009, when he claims he was arraigned in Bronx Criminal Court.[5] See Wallace, 549 U.S. at 397 (statute of limitations on false arrest claim "begins to run at the time the claimant becomes detained to legal process"); Swinton, 785 F. Supp. 2d at 12 (limitations period for false arrest begins to run "when [the defendant] is bound over by a magistrate or arraigned on charges"). The latest date that McClanahan's unlawful search and excessive force claims could have accrued is May 19, 2009, when McClanahan alleges that he was subjected to an unlawful search and excessive force. (Cmplt. (Dkt. No. 1) ¶¶ 28, 34-37, 42-43); see Spencer, 560 F. Supp. 2d at 159 ("[A] claim for an illegal search accrues, and a plaintiff has a complete and present cause of action, when the act of searching the property is complete."); Jefferson, 2008 WL 1840767, at *3 ("[A] claim for excessive force accrues when the use of force occurred.") (citations omitted). Accordingly, under the applicable three-year statute of limitations, McClanahan's deadline for bringing his false arrest, unlawful search, and excessive force claims expired in May 2012. Because McClanahan did not file this action until July 10, 2012 – nearly two months after the statute of limitations expired – his claims for false arrest, unlawful search, and excessive force are time-barred.[6]

---

[5]  As discussed above, McClanahan alleges that he was arrested on May 19, 2009. See supra note 1. Given Plaintiff's allegation that he "was processed and held in jail until his arraignment in Bronx Criminal Court approximately 48 hours after [he] was illegally arrested," (Cmplt. (Dkt. No. 1) ¶ 44), Plaintiff could have been arraigned as late as May 21, 2009.

[6]  The statute of limitations does not bar McClanahan's malicious prosecution claim. A malicious prosecution claim does not accrue until the underlying criminal proceedings have been terminated. See Murphy v. Lynn, 53 F.3d 547, 548 (2d Cir. 1995) ("[F]or claims based in malicious prosecution, [the statute of limitations] period starts to run only when the underlying criminal action is conclusively terminated."); Singleton, 632 F.2d at 189, 193 ("Turning to [Plaintiff]'s malicious prosecution claims, it is undisputed that this claim accrued on December 16, 1976," when the prosecution against him was terminated.); see also Heck v. Humphrey, 512

### B.     Malicious Prosecution Claim

#### 1.     Applicable Law

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment[] . . . and must establish the elements of a malicious prosecution claim under state law." Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010) (internal citations omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" Id. at 161 (quoting Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997)).

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003) (citing Colon v. City of New York, 60 N.Y.2d 78, 82 (N.Y. 1983)). "Probable cause consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty." Colon, 60 N.Y.2d at 82; see Rounseville v. Zahl, 13 F.3d 625, 629-630 (2d Cir. 1994) ("In the context of a malicious prosecution claim, probable cause under New York law is 'the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.'") (quoting Pandolfo v. U.A. Cable Sys. of Watertown, 171 A.D.2d 1013, 1013 (4th Dep't

---

U.S. 477, 489 (1994) ("[A] cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor. . . ."). Here, the criminal proceedings against McClanahan were terminated on August 14, 2009, when the Bronx County District Attorney dismissed the charges against him with prejudice. (Cmplt. (Dkt. No. 1) ¶ 46) Because McClanahan brought this action on July 10, 2012, his malicious prosecution claim is timely.

10

1991)). "Stated another way, the question is whether 'a discreet and prudent person would be led to the belief that a crime had been committed by the person charged.'" Lawson v. N.Y. Billiards Corp., 331 F. Supp. 2d 121, 131 (E.D.N.Y. 2004) (quoting Loeb v. Teitelbaum, 77 A.D.2d 92, 103 (2d Dep't 1980)).

In malicious prosecution cases, "'the determination of probable cause is assessed in light of the facts known or reasonably believed at the time the prosecution was initiated, as opposed to at the time of arrest.'" Drummond v. Castro, 522 F. Supp. 2d 667, 677-78 (S.D.N.Y. 2007) (quoting Carson v. Lewis, 35 F. Supp. 2d 250, 263 (E.D.N.Y. 1999)). "'[E]ven when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause.' In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996) (quoting Cox v. Cnty. of Suffolk, 780 F. Supp. 103, 108 (E.D.N.Y. 1991)).

Under New York law, "[a] person is guilty of menacing in the third degree when, by physical menace, he or she intentionally places or attempts to place another person in fear of death, imminent serious physical injury or physical injury." N.Y. Penal Law § 120.15. "A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person . . . [h]e or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same." N.Y. Penal Law § 240.26.

2.  **Analysis**

Here, it is clear that Officer Doherty had probable cause to believe that McClanahan had committed the crimes charged in the criminal complaint. Officer Doherty

responded to a victim complaint – memorialized in a 911 Sprint Report[7] – alleging that a male in Apartment 5E, 3215 Bainbridge Avenue, had pulled a knife on the caller, who resided in Apartment 4E downstairs. (Abt Decl. (Dkt. No. 11), Ex. B) According to the arrest and complaint report, and the criminal complaint, the complaining victim told Officer Doherty that he had walked upstairs to McClanahan's apartment to ask him to "keep the noise down," explaining that the complainant had to go to work the next day. (Id., Ex. D) In response, McClanahan told his neighbor to "get the fuck out of here," and pushed him in the face with his open hand. (Id.) The complaining victim told Officer Doherty that McClanahan had a metal object in his hand and threatened to cut the complainant. (Id., Ex. C) When police knocked on the door to Apartment 5E, McClanahan answered. He denied having a "problem" with his neighbor downstairs in Apartment 4E, but he admitted knowing that "someone" had complained to police before about the "constant loud noise" in his apartment. McClanahan was then arrested. (Id., Ex. C; see also Cmplt. (Dkt. No. 1) ¶¶ 13, 28-29, 33, 37)

    Based on this information, a reasonably prudent person in like circumstances would conclude that McClanahan was guilty of the crimes charged. See Rounseville, 13 F.3d at 629-30. Moreover, Officer Doherty was entitled to rely on the victim's complaints. See Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's

---

[7] "Judicial notice may be taken of public records, including 'arrest reports, criminal complaints, indictments, and criminal disposition data.'" Awelewa v. New York City., No. 11 Civ. 778 NRB, 2012 WL 601119, at *2 (S.D.N.Y. Feb. 23, 2012) (quoting Wims v. N.Y.C. Police Dep't, No. 10 Civ. 6128 PKC, 2011 WL 2946369, *2 (S.D.N.Y. July 20, 2011)). "Where a 'court takes judicial notice, it does so in order to determine what statements [the public records] contained . . . not for the truth of the matters asserted.'" Id. (quoting Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007)) (alteration in original).

veracity.") (citations and internal quotation marks omitted); Khaja-Moinuddin v. City of New York, No. 09-CV-646 (CBA)(LB), 2010 WL 3861003, at *5 (E.D.N.Y. 2010) ("The veracity of those individuals 'who are the victims of the very crime they report to the police is assumed.'") (quoting Miloslavsky v. AES Eng'g Soc., Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993)). Accordingly, McClanahan's claim for malicious prosecution will be dismissed.

## II. SECTION 1983 CLAIMS AGAINST THE CITY OF NEW YORK, MAYOR BLOOMBERG, AND COMMISSIONER KELLY

An underlying constitutional violation by a state actor is a prerequisite to municipal liability under Monell. See Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658 (1978). Accordingly, when the claims against an individual defendant are dismissed, the claims against the City must also be dismissed, given that a Plaintiff's Monell claims are derivative of his claims against the individual defendants. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("[N]either [Monell], nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); Curley v. Vill. of Suffern, 268 F.3d 65, 71 (2d Cir. 2001) ("[W]e have recognized that a municipality cannot be liable for inadequate training or supervision when the officers involved in making an arrest did not violate the plaintiff's constitutional rights."). Accordingly, because McClanahan has not established that Officer Doherty violated his rights, his Monell claim against the City of New York will be dismissed.

As to Mayor Bloomberg and Commissioner Kelly, McClanahan's claim similarly fails because he has not established an underlying constitutional violation. See Elek v. Inc. Vill. of Monroe, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) ("[B]ecause Plaintiff has not established any underlying constitutional violation, she cannot state a claim for § 1983 supervisor liability."). Even if McClanahan had made out a claim against Officer Doherty, his claims against Mayor Bloomberg and Commissioner Kelly would fail, because he has not pleaded facts demonstrating their personal involvement in the alleged incident. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citation omitted).

Plaintiff's Section 1983 claims against Bloomberg and Kelly will be dismissed.

### III. MCCLANAHAN'S STATE LAW CLAIMS WILL BE DISMISSED WITHOUT PREJUDICE

Under 28 U.S.C. § 1367(c), "a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." Schaefer v. Town of Victor, 457 F.3d 188, 210 (2d Cir. 2006) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice." Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 103 (2d Cir. 1998) (citing Carnegie-Mellon Univ., 484 U.S. at 350) (emphasis omitted).

There is no reason to deviate from that rule here. Accordingly, to the extent that the Complaint could be construed as asserting state law claims, this Court declines to exercise supplementary jurisdiction and will dismiss those claims without prejudice.

14

IV.     **LEAVE TO RE-PLEAD**

Although McClanahan has not requested leave to re-plead, the Court has considered whether he should be given an opportunity to do so.  The Second Circuit has instructed that courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks and citation omitted).  However, a court may decline an opportunity to re-plead "when amendment would be futile."  Tocker v. Philip Morris Cos., Inc., 470 F.3d 481, 491 (2d Cir. 2006) (citing Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003)).

Here, the Court finds that amendment would be futile, because the deficiencies in McClanahan's complaint are not the result of "inadequate[ ] or inartful[ ]" pleading, and are not susceptible to cure.  See Cuoco, 222 F.3d at 112.  McClanahan's Section 1983 claims for false arrest, unlawful search, and excessive force are time-barred.  This obstacle cannot be overcome through re-pleading.  Moreover, McClanahan's claim for malicious prosecution turns on information provided to the police by a downstairs neighbor.  Whether the report is true or false is irrelevant to the probable cause determination absent reason – on Officer Doherty's part – to suspect that the report was unreliable.  There is no such evidence in the record, and there is no reason to believe that McClanahan could plead additional facts that would require a different finding.  Accordingly, dismissal will be without leave to re-plead.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted.[8] The Clerk of the Court is directed to terminate the motion (Dkt. No. 9), and to close this case. The Clerk of the Court is further directed to mail a copy of this Order to <u>pro se</u> Plaintiff Michael McClanahan, 3215 Bainbridge Avenue, Apt. 5E, Bronx, NY 10467.

Dated: New York, New York
       March 31, 2014

SO ORDERED.

_Paul G. Gardephe_
Paul G. Gardephe
United States District Judge

---

[8] On March 27, 2014, McClanahan filed an Amended Complaint. (Am. Cmplt. (Dkt. No. 17)) The Amended Complaint recites the same allegations as the original complaint but substitutes Commissioner Bratton and Mayor De Blasio as defendants in place of Commissioner Kelly and Mayor Bloomberg. Because the same analysis applies to the Amended Complaint, it is likewise dismissed.